FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.
2006 JUN 22 AM 11: 19
SIGN_____
by DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

LISA MARIE GINTER, PAUL EDWARD
GINTER, both individually and ON BEHALF
OF THE MINOR CHILD RACHEL
ELIZABETH BALLARD

PLAINTIFFS

VERSUS                        CIVIL ACTION NO.: 05-1392-JJB-SCR

BELCHER, PRENDERGAST & LAPORTE,
FRED H. BELCHER, JR., E. BUDDY
THOMPSON, WOMAN'S HOSPITAL, DR.
CHRISTOPHER FUNES, AND DR. JOSEPH
THOMAS

DEFENDANTS

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS CLAIMS OF LISA MARIE GINTER
## AND PAUL EDWARD GINTER FOR LACK OF SUBJECT MATTER JURISDICTION
## AND/OR IMPROPER VENUE

## AND

## MOTION TO DISMISS CLAIMS ON BEHALF OF THE MINOR CHILD
## RACHEAL ELIZABETH BALLARD FOR FALIURE TO STATE A CLAIM
## UPON WHICH RELIEF CAN BE GRANTED

**MAY IT PLEASE THE COURT:**

This suit was filed by the plaintiffs Lisa Marie Ginter and Paul Edward Ginter (the "Ginters" or the "Plaintiffs"), individually and on behalf of their minor adopted daughter based upon a contract for adoption services entered by and between the Ginters and the defendant Fred H. Belcher, Jr. ("Belcher"). Also named as a defendant was Mr. Belcher's former law firm, Belcher, Prendergast & Laporte (the "Law Firm"). Belcher and the Law Firm have filed responsive pleadings denying the allegations asserted by the Plaintiffs and excepting to the subject matter jurisdiction and venue of this Court. For the reasons discussed below, this Court

does not have subject matter jurisdiction over the claims asserted by the Ginters individually and/or venue is not proper and this federal suit should be dismissed.

The claims of the Ginters on behalf of the minor adopted child are not governed by the contractual relationship between the Ginters and the defendants. However, the claims on behalf of the minor child fail to state a claim upon which relief can be granted in that there is no allegations that Belcher or the Law Firm are responsible for her biological mother using drugs or alcohol while pregnant. The child would have been born with fetal alcohol syndrome regardless of any actions or inactions by Belcher or the law firm.

I. INTRODUCTION

The underlying basic facts of the case as gleaned from the pleadings are not in dispute. The Ginters are residents of the state of South Carolina. Belcher is an attorney who has provided adoption services in Baton Rouge for well over thirty (30) years. The Ginters had previously used Mr. Belcher to adopt a baby girl who had been born in Louisiana. When the same birth mother had a second child she wanted to place for adoption, the Ginters were asked if they wished to adopt the child who would be a half sibling of their adopted daughter. The Ginters entered into an agreement with Belcher, procuring his services for the adoption of the second child. (Complaint, paragraph number 9.) The field of adoptions is a specialized and difficult area of practice due to the numerous laws in place to protect the rights of the biological parents. The adoption agreement between the parties (a copy of which is attached to the motion to dismiss and to this memorandum) specifically provides that the Ginters were informed about the complexities of the adoption law and that Mr. Belcher could not guarantee a successful result.

The agreement states that the Ginters "agree to pay Fred H. Belcher, Jr. the sum of Twenty-eight Thousand Seven Hundred Fifty and 00/100 ($28,750.00) Dollars as payment for

the medical bills, hospital bills, living expenses of the biological mother during pregnancy and for a reasonable time afterwards, and attorney's fees". (Complaint, paragraph 11). In exchange, Belcher agrees "that he will procure and deliver to Paul Edward Ginter and Lisa Marie Ginter a healthy Caucasian child from a biological mother" and he further agrees "the final adoption shall be legal". (Complaint, paragraph 10). The parties further contracted for a choice of law and venue of any litigation which might arise out of this Agreement. The last paragraph on page 1 of the Agreement specifically provides:

> "It is mutually understood and agreed that this contract shall be governed by the laws of the State of Louisiana and specifically by the Louisiana Children's Code both as to interpretation and performance. Any action at law, suit in equity, or other judicial proceedings for the enforcement and/or breach of this contract, or any provision thereof shall be instituted only in the courts of Louisiana".

On December 5, 2004, a female infant was born of the biological mother that Belcher had placed with the Ginters. The infant was turned over to the Ginters on December 9, 2004 awaiting the final surrender by the biological mother. (Complaint, paragraph 13). After the birth mother signed the surrender, the plaintiffs took the infant child and departed the State of Louisiana on or about December 13, 2004. (Complaint, paragraph 14). Belcher proceeded with the preparation of the adoption pleadings and furnished documentation and other records to the Louisiana Commission on the Interstate Compact for the Placement of Children ("ICPC"). (Complaint, paragraph 15). Before the interlocutory adoption hearing could be held on July 22, 2005, the Ginters terminated Mr. Belcher's services as the attorney handling the adoption. Although Mr. Belcher was aware that the South Carolina ICPC had requested medical information and an "at risk" affidavit to be signed by the adoptive parents, he never received notification from the Ginters that they wished to withdraw from the adoption or reject the infant who had been selected for placement. The Ginters made payments under the adoption agreement

totaling $28,750. It is presumed that the Ginters proceeded with the final adoption of the infant child, although that is not specifically alleged in the petition.

Although numerous defendants were named in the original pleading, all except Belcher and the Law Firm have been voluntarily dismissed.

II. THE PETITION OF THE GINTERS INDIVIDUALLY FAILS TO MEET THE FEDERAL JURISDICTION REQUIREMENTS OF $75,000.

The defendants contend that this Court lacks subject matter jurisdiction due to the fact that the amount actually in controversy as to the individual claims of the Ginters cannot reach the jurisdictional requirement of $75,000 exclusive of interest and costs. 28 USC §1332. While there is no question that the parties in this case are residents of different states, the amount in controversy clearly does not reach the required amount of $75,000. When jurisdiction is premised on the diversity of the parties, the Court is obligated to insure itself that the case involves the requisite amount in controversy. See, for example, *Lauglin v. K-Mart Corporation*, 50 F.3rd 871, 873-874 (10th Cir. 1995). (Dismissing case *sua sponte* based upon an insufficient amount in controversy stating that "subject matter jurisdiction is not a matter of equity or of conscience or of efficiency, but is a matter of the lack of jurisdictional power to decide a controversy").

The burden of establishing the requisite amount in controversy rests on the party seeking to invoke the Court's jurisdiction, which in this case is the Plaintiffs. See *St. Paul Reinsurance Co. Ltd. vs. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *Diqueira vs. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998). Determination of the amount in controversy is a two step process: First, the complaint is examined to determine whether it is "factually apparent" that the claim exceeds the jurisdictional amount; second, "if the amount is not thus apparent, the Court may rely on "summary judgment – type" evidence to ascertain the amount in controversy". *St. Paul*

*Reinsurance Company*, 134 F.3d at 1253, citing *Allen v. R & H Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995). The test is whether it is more likely than not that the Plaintiffs' claim exceeds $75,000. *Allen v. R & H Oil and Gas Co.*, 63 F.3d 1326 (5th Cir. 1995); *Ohio Cas. Ins. Co. vs. J. Calderera & Co., Inc.*, 202 W.L. 1941446 (e.d. La 8/21/2002).

While a review of the Plaintiffs' individual complaint indicates that they are seeking $800,000 for treatment of the minor child for medical difficulties created by fetal alcohol syndrome (Complaint, paragraph 21) and mental and emotional anguish and distress and loss of income (Complaint, paragraph 32), a review of the contractual relationship between the parties clearly demonstrates that the obligation of Mr. Belcher, if any, regarding the health of the child is quite limited. The contract provides in part: "Fred H. Belcher further guarantees that Paul Edward Ginter and Lisa Marie Ginter shall receive a healthy Caucasian child. He only guarantees the mental and physical health of the child for a period of thirty (30) days from the date adoptive parents receive the child. He is not responsible for any of the child's medical bills from the time the child is removed from the hospital". The complaint makes no allegations of the amount of medical expenses incurred for the minor child after she left the hospital in Louisiana (or for 30 days after the adoptive parents received the child), but it is anticipated that such claims would not approach the sum of $75,000.

It should also be noted that the Plaintiffs became aware of the medical condition of the child before any of the adoption proceedings in Louisiana were finalized. Under the Louisiana Children's Code, an adoption requires both an interlocutory decree and a final decree of adoption before the adoption becomes final and binding. See Louisiana Children's Code arts. 1232 and 1240. The final adoption cannot take place until the child has been with the adoptive parents for at least one year and until at least six months have passed since the interlocutory decree was

- 5 -
Case 3:05-cv-01392-JJB-SCR   Document 45   06/22/06   Page 5 of 14

issued. Louisiana Children's Code art. 1238. In addition, even if an interlocutory decree had been granted, which had not occurred in this case when the Ginters learned of the child's medical condition, that decree could be revoked at any time prior to the final decree upon motion of any interested party, including the prospective adoptive parents (Louisiana Children's Code art. 1237). Since the Plaintiffs knew of the potential that the infant child suffered from fetal alcohol syndrome well before they proceeded with even the interlocutory decree, they could have withdrawn from the adoption at any point prior to the final decree. (Complaint paragraphs 18 through 20). The fact that they elected not to do so, does not allow them to now claim medical expenses, mental anguish, treatment costs, loss of income, etc., from these defendants.

III. THE INDIVIDUAL CLAIMS OF THE GINTERS SHOULD BE DISMISED FOR LACK OF VENUE DUE TO CONTRACTUAL FORUM SELECTION CLAUSE

Defendant also contends that venue in this Court is improper, based upon the contractual forum selection clause in the adoption agreement which states that "any action at law, suit in equity, or other judicial proceeding for the enforcement and/or breach of this contract, or any provision thereof, shall be instituted only in the courts of the State of Louisiana."

The forum selection clause in the present case clearly restricts litigation arising from the adoption to the courts of the State of Louisiana and this suit was therefore improperly filed in a United States District Court. The United States District Court, while located in the State of Louisiana, is clearly not a court "of the State of Louisiana." The clause, as written, requires that any litigation pursuant to the contract between the parties be brought in a Louisiana State Court and not a court of Federal Jurisdiction. The practice of adoption is a highly specialized and limited field of practice. Adoption practices in Louisiana are specifically governed by the Louisiana Children's Code and the principles of that code and of the state laws regarding attorney negligence will be extremely relevant to a determination of the issues. Defendants

contend that the Louisiana State Courts are more experienced with the relevant provisions and, therefore, provide a more appropriate forum. For those reasons, the adoption contract was written to include a clause limiting litigation to the courts "of the State of Louisiana."

The Plaintiffs in this case are familiar with the adoption procedure in Louisiana because they had adopted through Belcher another Louisiana child who had been rejected by another couple because of a birth defect. (Complaint paragraph 4). They later signed the contract at issue in this case to adopt a second child, which contract contains the above referenced forum selection clause. A person signing a written instrument is presumed to know its contents and cannot avoid its terms by contending that he did not read it, nor that it was not explained, nor that he did not understand it. *Carter's Insurance Agency, Inc. v. Franklin,* 428 So.2d 808 (La. App. 1 Cir. 1983); *Smith v. Leger,* 439 So.2d 1203 (La. App. 1 Cir. 1983).

The plaintiffs signed a contract that limits litigation to the courts "of the State of Louisiana." Forum-selection clauses in contracts are legal and binding. A party attempting to set aside a forum-selection clause bears a heavy burden. *See Digital Enterprises, Inc. v. Arch Telecom, Inc.,* 658 So.2d 20 (La. App. 5 Cir. 6/28/95). The United States Supreme Court, in *M/S Bremen v. Zapata,* 92 S. Ct. 1907; 32 L.Ed. 513, 407 U.S. 1 (1972), held that parties to a contract may agree in advance to submit to the jurisdiction of a particular court and such agreements are binding. In the present case, the parties agreed to submit to the Jurisdiction of the courts of the State of Louisiana. That agreement should be enforced and the individual complaints of the Ginters should be dismissed as it was not filed within the appropriate state court.

## IV. THE CLAIMS ON BEHALF OF THE MINOR CHILD RACHEL ELIZABETH BALLARD SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The claims in the complaint on behalf of the minor child Rachael Elizabeth Ballard as directed against Belcher and the Law Firm are found in paragraphs 46 through 50 of the complaint. Those complaints contend that Belcher had the obligation to investigate the health of the biological mother during pregnancy and to investigate the health/drug test results of the minor child after her birth and to provide that information to the prospective adoptive parents. There is no basis alleged in the complaint as to why Belcher owed any such duty to the minor child or why he would be responsible for the actions of the biological mother. It is apparent that the infant would have been born with her medical condition regardless of any action or inaction taken by Belcher. It is also apparent that the allegations being made by the Ginters individually are in conflict with the allegations made by the Ginters on behalf of the minor child. The Ginters are apparently contending that if Belcher had advised them of the possibility that the minor child could be suffering from FAS as a result of the birth mother using drugs or alcohol, they would have likely opted out of the adoption of the child and if that had happened the Ginters would have no claim. On the other hand, the allegations contained in Paragraph 47 on behalf of the child contend that Belcher should have notified the Ginters of the child's condition before placement, so presumably the Ginters could have declined the adoption. How the Ginters declining the adoption of this could have benefited the child, is left to conjecture.

The claims of the child seem to be tantamount to a wrongful life claim, which are generally not recognized in Louisiana. A child does not have a claim against a doctor for wrongful life where the doctor's negligence caused the fact of the pregnancy. *Pitre v. Opelousas General Hospital*, 530 So. 2d 1151 (La. 1988). However, the courts have recognized the possibility of a

wrongful life claim when a child is born with a physical deformity caused by the negligence of the doctor or reasonably foreseeable by the doctor who negligently performed a sterilization procedure. *Id.*; *Conner v. Stelly*, 2002-549 (La. App. 3d Cir. 10/30/2002), 830 So. 2d 1102. In both cases, parents sued a doctor who negligently performed a sterilization procedure resulting in pregnancy for the child's physical defect, albinism in *Pitre* and cerebral palsy in *Conner*. *Pitre*, 530 So. 2d 1151; *Conner*, 830 So. 2d 1102. In both cases, the court held that the doctors could not have foreseen the defect as a consequence of the failed sterilization procedure; therefore, the child could not recover from the doctor for his malpractice which caused the child's conception. *Pitre*, 530 So. 2d 1151; *Conner*, 830 So. 2d 1102.

A wrongful life claim can only be maintained where the child suffers a physical defect. Thus, even where the negligence of a third party caused a child to be illegitimate, no wrongful life claim is recognized. *See Henry v. Taco-Tio, Inc.*, 614 So. 2d 772 (La. App. 2d Cir. 1993); *Lloyd v. Howard*, 566 So. 2d 424 (La. App. 3d Cir. 1990); *Kocke v. Bancroft Rehabilitation Living Centers, Inc.*, 2004 WL 1615589 (E.D. La. 2004); *see also Doe v. Cronan*, 487 So. 2d 461 (La. App. 5th Cir. 1986) (denying claims of illegitimate child against his father).

In addition, a child does not have a cause of action against his mother's employee for a defect suffered at birth because of his mother's continuing to work during her pregnancy. *Cox v. Gaylord Container Corporation*, 2003-0692 (La. App. 1st Cir. 2/23/2004), 897 So. 2d 1. In *Cox*, a mother and her child attempted to hold the mother's employer vicariously liable for the birth defects of the child caused by the mother's negligence in continuing to work during her pregnancy. The court held that the employer's vicarious liability was limited to actions which it could have prevented. *Id.* Since the law forbade it from preventing the mother from working while pregnant, the employer could not be vicariously liable. *Id.* The court, however,

recognized that the child had a cause of action against his mother for her negligence which caused his birth defects. *Id.* That action, however, could not be brought until the child was emancipated or reached majority. *Id.*

In this case, the child allegedly suffers from fetal alcohol syndrome and other effects of her biological mother's drug and alcohol abuse during pregnancy. The child's adoptive parents have brought suit on behalf of the child not against the delivery doctors or the hospital where the child was delivered (those defendants have all been dismissed), but now only against Belcher, the attorney who handled the initial stages of the adoption. While it is conceivable that a claim for defective birth can be asserted against a doctor, it stretches the imagination to see how that logic can be extended to an attorney who is involved in handling an adoption. In order for the child to have a claim, the theory of liability must be that Belcher's negligence in dealing with the mother was a cause of the child's difficulties arising from the drug and alcohol abuse. In order to recover, the child must prove that Belcher, as the attorney handling her adoption, owed a duty to protect her from her mother's abuse of drugs and alcohol, that he breached that duty, and that his failure to protect her caused her damages. Even if Belcher had a duty to test for drugs and alcohol and even if he knew about the mother's drug and alcohol use, he could not have prevented the mother from abusing drugs and alcohol. If he could not have prevented the damage, then, like the employer in *Cox*, he cannot be held liable. *See Cox v. Gaylord Container Corp.*, 2003-0692 (La. App. 1st Cir. 2/23/2004), 897 So. 2d 1. Likewise, the child cannot contend that she was damaged because the adoption by the Ginters went forward, because the other options would have likely been less beneficial to her. If the minor child has an action for damages caused by the drugs and alcohol, that action must be directed against her mother. *See id* Since Belcher was not in a position to control how the biological mother behaved while

- 10 -
Case 3:05-cv-01392-JJB-SCR     Document 45     06/22/06     Page 10 of 14

pregnant, the claim on behalf of the minor child fails to state a cause of action upon which relief can be granted and that claim should be dismissed.

## V. CONCLUSION

Defendant contends that this court lacks jurisdiction because the amount actually in controversy is less than seventy-five thousand dollars exclusive of interest and costs. The suit is based upon a contract, under which Plaintiff's paid to defendant the total sum of $28,750.00. The Ginters are not seeking a return of the amount paid because they did in fact proceed with the adoption. Much of the fee paid to Belcher was in turn paid by Belcher to the birth mother on behalf of the Plaintiffs as is allowed under Louisiana law. Accordingly, the claims of the Plaintiffs cannot seek a return of the $28,750 paid in "fees". The claim is for the alleged breach of contract in that Belcher failed to provide "a healthy child". Since the same contract also limits Belcher's responsibility for medical bills for the child after it leaves the hospital or for the child's "mental or physical health" only for a period of 30 days, the claims cannot realistically reach the federal jurisdictional levels. As the jurisdictional requirements have not been met, this Court lacks jurisdiction and the complaint should be dismissed in its entirety.

Even if it can be claimed that the jurisdictional level has been pleaded, Defendants further show that the contract in question also contains a forum selection clause which states that "any action at law, suit in equity, or other judicial proceeding for the enforcement and/or breach of this contract, or any provision thereof, shall be instituted only in the <u>courts of the State of Louisiana</u>." This forum selection clause clearly restricts litigation on this contract to the courts of the State of Louisiana and this suit was therefore improperly filed in a United States District Court. The suit should be dismissed for failure to file in the appropriate Louisiana State Court.

- 11 -

Case 3:05-cv-01392-JJB-SCR   Document 45   06/22/06   Page 11 of 14

The claims asserted on behalf of the minor child clearly fail to state a claim against Belcher and the Law Firm. Accordingly, the claim on behalf of the child should also be dismissed.

BY ATTORNEYS:

KANTROW, SPAHT, WEAVER & BLITZER
(A PROFESSIONAL LAW CORPORATION)
445 North Boulevard, Suite 300 (70802)
Post Office Box 2997
Baton Rouge, Louisiana 70821-2997
Telephone: (225) 383-4703
Facsimile (225) 343-0630

By: _____
John C. Miller (Bar Roll # 9490)
Attorneys for Fred H. Belcher, Jr. and Belcher, Prendergast & Laporte

### CERTIFICATE

I hereby certify that a copy of the above and foregoing has this day been mailed, postage prepaid, to all counsel of record.

Baton Rouge, Louisiana, this __22__ day of June, 2006.

_____
John C. Miller

#168517

- 12 -

Case 3:05-cv-01392-JJB-SCR   Document 45   06/22/06   Page 12 of 14

# AGREEMENT

**WHEREAS, PAUL EDWARD GINTER** and **LISA MARIE GINTER** desire to adopt a newborn Caucasian child

**WHEREAS, FRED H. BELCHER, JR.,** Attorney-At-Law, handles adoption cases in the State of Louisiana.

**NOW THEREFORE**

**PAUL EDWARD GINTER** and **LISA MARIE GINTER** agree to pay Fred H. Belcher, Jr. the sum of Twenty-Eight Thousand Seven Hundred Fifty and No/100 ($28,750.00) as payment for medical bills, hospital bills, living expenses of the biological mother during pregnancy and for a reasonable time afterwards, and attorney fees. This contract <u>does not</u> cover court costs for the adoption.

**PAUL EDWARD GINTER** and **LISA MARIE GINTER** further agree they will pay $10,000.00 upon execution of this agreement, $10,000.00 forty-five (45) prior to the anticipated due date and $8,750.00 upon receipt of the child.

Should the child be born premature or for medical reasons, be required to stay in the hospital more than two days, the parents and/or their hospitalization insurance policy shall be responsible for the expenses incurred by the child for any stay in excess of two days.

Fred H. Belcher, Jr. hereby guarantees he will procure and deliver to **PAUL EDWARD GINTER** and **LISA MARIE GINTER** a healthy Caucasian child from a biological mother.

**<u>Should the adoptive parents withdraw from this agreement, they forfeit all monies deposited with Fred H. Belcher, Jr.</u> This agreement cannot be assigned by either party.**

Fred H. Belcher, Jr. further guarantees the final adoption shall be legal.

Fred H. Belcher, Jr. further agrees that should the biological mother refuse to sign the consent papers for the adoption, or the adoption fails for any reason, he guarantees that **PAUL EDWARD GINTER** and **LISA MARIE GINTER** shall be placed with another pregnant biological mother, either through his or their joint efforts, within twelve (12) months of the date of refusal or a refund of one-third (1/3) all monies deposited with him. Should the adoptive parents, **PAUL EDWARD GINTER** and **LISA MARIE GINTER** be placed with a second biological mother and the biological mother refuses to sign the consent papers for the adoption or the adoption fails for any reason, the adoptive parents, **PAUL EDWARD GINTER** and **LISA MARIE GINTER** shall <u>not</u> receive a refund of any monies deposited with Fred H. Belcher, Jr.

Fred H. Belcher, Jr. further guarantees that **PAUL EDWARD GINTER** and **LISA MARIE GINTER** shall receive a healthy Caucasian child. He only guarantees the mental and physical health of the child for a period of thirty (30) days from date adoptive parents receive the child. He is not responsible for any of the child's medical bills from the time the child is removed from the hospital.

We, **PAUL EDWARD GINTER** and **LISA MARIE GINTER**, acknowledge that we have been advised by Fred H. Belcher, Jr. that the field of adoptions is a specialized and difficult area of practice due to the numerous laws in place to protect the rights of the biological parents including, but not limited to, specific waiting periods during which the final surrender cannot be executed. We understand that the surrender of the child cannot be finalized until the expiration of those waiting periods and that Fred H. Belcher, Jr. does not guarantee a successful result We have further been advised that failed adoptions are a regular occurrence in this field and that there is a real risk that the adoption will not be finalized.

It is mutually understood and agreed that this contract shall be governed by the laws of the State of Louisiana, and specifically by the Louisiana Children's Code both as to interpretation and performance. Any action at law, suit in equity, or other judicial proceeding for the enforcement and\or breach of this contract, or any provision thereof, shall be instituted only in the 19th Judicial District Court of the State of Louisiana.

We, **PAUL EDWARD GINTER** and **LISA MARIE GINTER,** acknowledge that we have read this contract in its entirety and that we have been given the opportunity to ask questions. After having done so, we hereby acknowledge that we understand the terms, conditions and risks involved in entering into this contract and that we hereby accept all of the terms, conditions and risks outlined in this agreement.

**THUS DONE AND SIGNED** in the City of Bluffton, State of South Carolina, this ___ day of August, 2004.

*[signature]*
**PAUL EDWARD GINTER**

*[signature]*
**LISA MARIE GINTER**

**THUS DONE AND SIGNED** in the city of Baton Rouge, State of Louisiana this 11TH day of August, 2004.

**BELCHER & PRENDERGAST**

BY *[signature]*
**FRED H. BELCHER, JR.**